Good morning, ladies and gentlemen. Before calling the first matter in calendar, may I remind council for appellants that our clocks do not visibly take account of any time that you want to save for rebuttal. So if you don't want to be disappointed, the best thing to do is just stop talking with a few minutes left on the clock. The first matter on calendar is Murray T. Please. Good morning, Judge Weimer and members of the court. My name is Carl Verity. I'm representing the appellant in this matter. Because I'd like to reserve two minutes or so for rebuttal. I'll use up in about eight minutes, I hope, in my argument this morning. What I would do to begin my argument is to call the court's attention to IDEA's mandate. And that mandate is that the DOE must provide meaningful educational opportunity. What does that mean? It means that the child should be in a program that permits him or her to make educational progress. And it's based on the child's individual and unique needs. Now, what is the child moving toward? Self-sufficiency. As much as she or he can attain. What is the IEP's function in this role? The IEP's function is either to have a fact-based, reality-based system in which the child's needs are matched to a program that is appellants will concede that the DOE has met its obligation in this case. But we would submit to you that a paper exercise cannot possibly fulfill IDEA's mandate or its purpose. What's interesting in this case, and the reason that we spent some time reviewing the prior due process hearing, and I'll note for the record, I'm sure the court is aware, the same hearing officer heard both cases in this particular matter. The hearing officer recognized Blake's needs and had no problem concluding that residential placement was necessary for this child because of his This is not a child who's verbal. This is not a child who can come home and say, Mom, something happened today. My teacher said thus and such. I'm supposed to be doing thus and such. The kids did thus and such. So it's very important in considering this case that the other component that the hearing officer focused on in the initial due process hearing is reviewed, and that is parental participation. Why is it so important in a case like this? It's so important because Mary, who's with me here at council table today, is Blake's sole advocate in this process. She, working with her experts, is the basis from which the parental side of the IEP will be created. Now the hearing officer recognized in the initial 2004 IEP that parental participation did not occur, that the parent was excluded, that the DOE predetermined placement, and that there was a lack of meaningful discussion of other placement options. Why is that important, particularly here? Because it's a small place with very, very limited options. It's not like California. The court may be familiar with the regional service centers in California that provide a spectrum of services to children there or adults with disabilities. We don't have anything like that here. We don't have a system like that here, which is why after the 2004 IEP meeting and before the initial decision, Mary went on an odyssey, both here in Hawaii and on the mainland, looking for a place that could receive and teach her son. After having done that and found a suitable place in Hartsburg, Kansas, we initiated the first due process hearing, and as I said, the hearing officer concluded there was a lack of meaningful discussion, a lack of consideration of placement options, and that the DOE had ignored the parent's concerns. I would submit to the court that those same considerations are evident in the record in the subsequent due process hearing, yet the hearing officer came to a different conclusion, which is why the appeal was the May 5th letter from Pauline Kokobun. Now, to put that in context, Ms. Kokobun is writing a letter a month and a half prior to an IEP meeting, referencing an IEP at a time when the child has not even been attending the school, saying we're going to bring him back pursuant to an IEP that you, Mary, have not seen, has not been discussed, you have had no input into, and which clearly, based on the history of the prior year, we have opposed the placement on the mainland, and we're going to continue to oppose it. The other thing that's very telling about that letter is it contains a false statement to the parent, saying this is unilateral placement if you keep your son there after the date of this letter. Presumably, there's no date in the document that it is the date of the letter, even before the IEP. That can't be. Clovis clearly states, this court's decision in the Clovis case, clearly states that placement determined by a hearing officer is the then current placement for purposes of statehood, and unless the parents and DOE collaboratively agree to a different placement, or unless the hearing officer determines, either in favor of the parent or DOE, that a different placement is appropriate, that's placement for purposes of statehood. Yet, even before Blake is attending, Mary is told by the DOE representative who's responsible for special education in the Honolulu district, your son will be attending there at your own risk, and then they refuse to pay, and then Mary has to initiate TRO proceedings. They refuse to pay again. Mary has to file an OSC. Finally, Judge Gilmore looks down at the DOE and says, I want somebody's name, and I'm going to tell that person they're going to go to jail if they don't pay. That's what it took to get payment in this case. Now, the predetermination of placement negates any sense that this was collaborative, that the DOE was considerate of the parent's concerns, that the DOE considered, for example, the information that was provided to them by HeartSpring at the June IEP meeting, that the DOE considered Dr. Siegel, their own expert's statement that the CFS program in Makaquilo was not appropriate to Blake, that the DOE considered Mary's assessment of that program, saying, you know, it's a bunch of little kids playing with crayons all day long. That's not appropriate for a teenager with behavioral problems. Let me ask you something. How do you, in your view, account for the fact that it was she who basically called a halt to that meeting? I think what happened in that meeting, if you read the record, and I see that I now have only two minutes left, I'd like to answer your question and then reserve, please. At that meeting, that meeting became so contentious that the HeartSpring director, who had called his staff together to be on the phone and try to collaborate with the DOE, excused them and excused himself from further participation. I think at the point at which you're coming to a meeting a month and a half after you're already told what the outcome of the meeting is going to be, and there's that kind of contention and that kind of hostility that follows it by the DOE representatives, I don't think a parent is supposed to sit there forever. I don't think a parent needs, especially given the totality of the picture here, that the parent can sit there and suffer unduly once their positions have been made known. I'm sorry, I only have a minute left. That's fine. Thank you. Thank you very much. Good morning. Good morning, Your Honors. May it please the Court, Deirdre Marie Iha, appearing on behalf of the Department of Education, State of Hawaii. We respectfully urge this Court to affirm the hearing officer's decision is entitled to deference under longstanding United States Supreme Court and Ninth Circuit precedent. There was no procedural violation, and the June 2005 offer was proper and did not deny a free and appropriate public education to Blake. I would like to take a moment to direct the Court's attention to what this case is not about. It is not about the prior administrative proceeding. It is not about the confusion that had been developed about who was paying for HeartSpring. Neither one of those things underlies this case. The standard overview for the hearing officer's decision is de novo, but the decision is entitled to deference if it is thorough and careful. This Court defined thorough and careful in R.B. v. Napa Valley Unified School District. If the hearing officer participates in the proceedings and issues an order with both then it is entitled to deference. Here, the hearing officer's decision included the factual background, including the prior decision, which was made by the same hearings officer, Dr. Siegel's opinion, the summary of other testimony that was presented at the hearing, and a thorough analysis of the appropriateness of both of the placements offered. The decision properly identified and applied the controlling legal standard and is entitled to deference. Could I ask just a preliminary question? Where is Blake now? He is at HeartSpring, Your Honor. He is at HeartSpring. And he's about 19 years old now? Yes, Your Honor. And then under Hawaii law, how long is he covered by this process? That's a very good question, Your Honor. Not much longer. The IDEA allows the states to define when IDEA coverage ends between the ages of 18 and 21. Hawaii has defined that to end at age 20. Blake turns 20 on July 4th of this year. And in order to be eligible for services, you must be under the age of 20 at the first instructional day of the new school year. I'll give you the site for the regulation. I can't quite recall the regulation. H.A.R. 856-15. Because he will not be under the age of 20 when the 2008-2009 school year begins, his eligibility for IDEA services will end fairly shortly. So what's live now about the controversy? He's at HeartSpring. He has been throughout. And has DOE been paying for that? Yes, Your Honor. And so his eligibility ends next month? Is that right? That's correct, Your Honor. I don't think that as I stand here today that the case is moot because he is still eligible for services today. However, I do believe that under Honig v. Doe, a U.S. Supreme Court case under the IDEA predecessor statute, which discussed mootness aging out of the coverage, that it will be moot in about six weeks. There was no procedural violation. The written notice was proper and complied with the applicable regulations, 34 CFR section 300-503. Even if there was a procedural violation, the denial of FAPE can result only if it causes lost educational opportunity or seriously infringes on a parent's opportunity to participate. There is no lost educational opportunity because, as Your Honor has inquired. If I may, before I completely forget about it, what would be the effect today of an affirmance today? Well, I don't think there would be much of an effect, frankly. Because the district court in the separate proceeding had ordered the DOE to pay HeartSpring directly, there's no pending reimbursement that would be out there. So if we affirmed, then he's still there today. And from what I've heard, I did inquire with the DOE. They have already started the procedural steps that are necessary to age him out of IDEA coverage. So what do both of you basically want? Sort of something out there to put in your pocket? I mean, is there something that could be resolved? I mean, this is a very peculiar situation. The timing is peculiar, Your Honor. In terms of what the parties want, I think appellant would be better positioned to answer that question. We just defend the position below. But it's our position that there was no denial. I think it might be relevant in this kind of situation when you consider that the hearing officer was considering a change in circumstances in the facilities that were available. And based on Dr. Siegel's testimony, the hearing officer concluded, yeah, the situation has changed, and now there is a facility. And I would like to be able to tell the hearing officer that they can do that. They can evaluate new facilities as they become available and appropriate for various students. Mother can make no showing that her ability to participate was seriously infringed. She did participate in the meeting, and adjustments to the IEP were made at that time. I wish to point out that the IEP itself is not in dispute. The IEP lists many detailed services that Blake is to receive. The only question is where that IEP is to be administered. I'd say most importantly on the procedural grounds from our point of view, that in order to comply with the IDEA's requirement for individualized plans for each disabled student, the department was required to investigate available options and come to the IEP meeting prepared. The IDEA should not be interpreted to discourage the careful investigation and preparation of FAPE offers. One of the things that Mother discusses in the opening and reply briefs was how the DOE staff didn't talk to her beforehand. But would Mother prefer that they came to the meeting not knowing if these facilities were appropriate, not knowing if there was an opening, not knowing if the two facilities were located close enough? They're supposed to look into it in order to present a FAPE offer, and that's exactly what they did. The department did not predetermine its location. It prepared the FAPE proposal. The Sixth Circuit addressed a similar issue in Berger v. Medina City School District, where the court held that the school officials having meetings beforehand, formulating opinions, and preparing a recommendation as to the child's placement did not seriously infringe on a parent's ability to participate. At the beginning of Appellant's argument, Counsel noted the purposes of the IDEA. Those purposes are true. However, Counsel has forgotten the way that the IDEA has been interpreted for a long time by the United States Supreme Court under Raleigh. An IEP must be reasonably calculated to enable the child to receive educational benefit. However, under longstanding precedent, that does not entitle any one child to the absolutely best or most potential maximizing education. It entitles them to the basic floor of opportunity. This is a very consistent interpretation of this law for quite some time. Mother argues that this court should apply out-of-circuit authority, redefining the FAPE standard. However, Mother's attempt to do so is inconsistent with Ninth Circuit precedent, particularly Gregory K. Furthermore, in 2007, in R.B. v. Napa Valley Unified School District, this court rejected out-of-circuit definitions of FAPE. Furthermore, because Mother makes no argument that the services proposed were actually insufficient to provide Blake with educational benefit, there was no real issue here about the degree of educational benefit that would be required to meet the FAPE standard. The out-of-circuit cases are therefore not relevant, in addition to not being controlling. Mother argues only two things about the FAPE offer, the existence of the residential home, and the failure to provide a transition plan. Both of those things are unavailing. Mother's claim that the residential home did not exist is contrary to the facts presented. And a transition plan was not necessary nor required at the time the FAPE offer was made. As Ms. Gandy testified, the DOE was going to put a transition plan together had the June 2005 offer been implemented at the time. And under the IDEA, no transition plan is required to move a student into a public school. There is no issue with the state put provision in this case. The June 2005 offer was never implemented, and there has been no change in placement. In conclusion, the hearing officer's decision is entitled to deference. There is no procedural violation, and the June 2005 offer was proper. We respectfully request that this court affirm the order and judgment of the district court. Thank you. Thank you, counsel. Mr. Burrard? May I ask you the flip side of the question I just asked Ms. Moriahu, and that is, what effect would a reversal today have today? It would actually have a very palliative and important effect, Your Honor. We acknowledge the fact that Blake is going to max out, and I do not dispute counsel's representations on that point. As of next month, today, it's a live controversy for the court. That's point one. Okay. But, I mean, what effect would a reversal today have today? Yes. A reversal would do four things. It would send a message to the DOE that they cannot predetermine placement, and they cannot unilaterally do that consistent with this court's prior rulings. It would insist that the program be in place in a tangible way for the parent to see, smell, touch, and evaluate it rather than having an IFCOM promise that sometime in October there would be a program there. Remember, the June IEP meeting is the time at which the program is supposed to be offered, and the parent is supposed to have an opportunity to see it, touch it, and assess it. Extremely important in a case like this where the child is nonverbal. The parent couldn't do that in this case, and Dr. Siegel confirmed that even in September there was no program there, nothing she could see, and what have you. I see the red lights on. There are two other points. The other two points, if I may, is that it would encourage the DOE to invite parents to participate fully, and it would require that the DOE adhere to hearing officers' decisions. I will tell you that this statehood issue has been a constant battle in this district, until Judge Kaye approximately a month and a half ago had to reconsider it and again remind the DOE that Clovis means what it says in a hearing officer's decision. Establish this placement. It is not unilateral after that. It's only unilateral unless the hearing officer has determined that, and I think that this court could help this district understand that. We have a statewide district, and one opinion from this court would bind every district and every DES in the state. I want to thank the panel very much for their time and their thoughtful questions today. All right. Thank you, Mr. Verratti. Thank you, counsel. The matter just argued will be submitted.
judges: Goodwin, Rymer, Ikuta